1639-44. Who will be arguing for plaintiffs? Good morning, Your Honor. My name is Alexandria C., and I am arguing for... Please come on up to the podium. I just wanted to let the court know that as of late last night, my co-counsel, Mr. Krongeier, came down with laryngitis, so I have made a last-minute substitution to make the argument this morning. And tell us your name again, please, on the record. Alexandria C., S-E-A-Y. Thank you. My pro hoc application will be completed this afternoon. We've cleared it with the clerk's office. We understand the circumstances. Okay. That gives you less time to worry about the argument. I guess that's one benefit. Go ahead. May I proceed? Your Honors, as you know from reading the briefs in this case, the issue of certification of these questions of state law to the Supreme Court was well-briefed, and I believe it's more important to decision rather than rehashing what has been briefed. First and foremost, the district court erred in its omission of the core term of person, which led to a domino effect and a limited and erroneous application of what it means for something to be a gross rental receipt. Unfortunately, due to time constraints, I can't go through all 12 ordinances. However, there are some that are illustrative of this point, and many of the ordinances have substantially similar provisions as the one in DuPlein's. And on page A301, the DuPlein City Ordinance gives the definition of operator, which means any person operating a hotel or motel. And then going to A302 in Appellant's Appendix, you'll see that the definition of person is a very broad definition. It's defined as any natural individual, firm, institution, agency, association, supplier, vendor, vendee. It's very clear that the legislator's intent in drafting this ordinance was to make sure that this ordinance applied broadly to persons acting as operators, operator being defined as a person who operates a hotel. In its 42-page order, the district court never once addressed this What does that definition add? It broadly defines who can be determined as an operator under the statute. It sounds like it broadens the kind of entities that could be determined a hotel operator, but doesn't really change the activity that's involved here. It would be helpful to me if you could address, I guess, my most here, which is that it is always, at least in my experience in the law, rental, whether we're talking about real estate or personal property, involves some physical control over some possession, a right to occupy. And I don't see that here. Yes, Your Honor. Well, in this case, the OTAs, the entities are taking control of the right to have the hotel room inventory, and then they pass that right on to the customers that rent the rooms in exchange for consideration. In these transactions, it's important to note that the OTAs are the only merchants of record. In fact, the transactions for the room rental takes place between the OTA and the customer. Who delivers the key? The hotel room delivers the key. The hotel room? The hotel itself, I'm sorry. The hotel operator? The hotel, the physical brick-and-mortar hotel. A human being, a person? Yes, at the front desk. Who is an agent of the operator of the hotel, right? Yes, Your Honor. However, the delivery of the key is not the important timing for these taxable transactions. These transactions, we can all agree, are taxable rental-of-room transactions in the State of Illinois in these municipalities. The important time, even under the statutes, is when the room reservation is made and when payment is collected. If you look at the Bedford Park Ordinance, for example, it states clearly, the charge shall be effective on each night that a room is reserved. So every time that room is reserved, when that reservation is made, is when the taxation is triggered. So the fact that the hotel passes the key along to the room. What happens if the room is canceled? If the room is canceled, then there are certain cancellation policies that these companies have. They differ from company to company. If the cancellation policy allows cancellation without a charge, then Bedford Park doesn't collect tax, does it? That's correct. Okay. So the reservation alone does not trigger the tax. It has to be a payment, right? There has to be a payment, and the payment has to be exchanged between the merchant of record, which here is the OTA, and the consumer. What happens if the OTA makes a reservation for a traveler who shows up and is told the hotel is full? There are certain provisions in the contracts between the OTAs and the customers that provide for what they call walk situations, and it is important because the OTA has transferred an intangible right to occupy the room to the customer. So they're not walking into the hotel and receiving the right to stay in that room when they get the key. Can the hotel just say to somebody who shows up, I don't know, drunk and armed to the teeth, no, we're not going to let you in tonight? Oh, absolutely. But they could say that to someone who made a direct reservation with them as well. Right. They control the hotel room, right? In extenuating circumstances, if somebody walks in inebriated, they're not going to be given a hotel room no matter which avenue they made the reservation through. Because they control the occupancy of the hotel room. There are pieces of control that, yes, the hotel holds onto, but the important part here is there are also pieces of this reservation and this transaction that are solely within the ambit of the OTAs. Why does that make them the primary operator then? It makes them the primary operator under the statute. And importantly, it's not just that they're an operator but that they fall within this broad definition of person. And they are the person, the merchant of record in the transaction that is collecting all of the consideration for the right to reserve the room or the right to occupy the room. They control all financial aspects of the transaction. They are the ones who charge the customer's credit card. They are doing many of the things that a hotel does when a customer books directly through a hotel. Many but not all. What about a cleaning service? They provide a portion of the hotel's operating needs, but yet I don't think anybody would make an argument that the cleaning service is the operator of the hotel. Why is it any different? Because the OTAs control or arguably control just one facet of the operations, and that's facilitating reservations. The fact that they control the financial piece of this transaction and they are the ones who give the consumer the intangible right to occupy a room at a hotel is important to the taxation on the rental of that hotel room. I would say that that would be more important than a cleaning service, as the cleaning service doesn't provide any right to stay in the room, and what's taxed here is the use and privilege of renting a hotel room. Is it correct? Correct. If I understand this, the way the defendant's software is set up, if I want to reserve a room, I click reserve, and their computer checks with the hotel's computer and says, is this okay? Is that right? In some situations, it may work that way. There are usually third-party central reservation systems that both ends of the transaction are using, and so the rooms that are available in the hotel will be loaded into a central reservation system, which then communicates with the OTA's computers. Sometimes there's a direct connection. However, at the end of the day, what's important is that the hotels are making room inventory available to the OTAs to put up for rent on their websites, and these OTAs are renting these rooms to consumers and providing them with And it's identical to what a hotel does when a hotel makes a direct booking. So a hotel still has to pay for the marketing, their websites, the credit card processing fees, the advertising. All of these services that the defendants are arguing should be exempt from taxation are the very same services that the hotels fund, the hotels provide to consumers, however, don't receive a tax exemption. It's important here to note that the contracts that the OTAs enter into with these hotels provide for an important binding relationship between these two entities, and it allows the OTAs to then take the step into the shoes of the hotel and act as the entity that is providing the customer with the right to use the room. And it's another thing that the district court ignored is that under Illinois law, an entity cannot do indirectly what is prohibited directly. And if the district court's decision is allowed to stand, what it is allowing the OTAs to do is to contract their way into a tax exemption, which is improper. By entering into these contracts and stepping into these transactions, they are saying that they get a tax exemption for the services that they're providing. And it makes sense that they should get that tax exemption when a hotel provides the very same services, however, tax. Do the municipalities here tax travel agencies? Yes. How? They are taxed. In fact, the OTAs act as travel agencies under their agency model, which isn't an issue in this case. But interestingly, as was set out in the appellant's statement of material facts in the district court, when an agency transaction takes place, taxes are paid on the full retail rate. For whatever the travel agent's services are? Yes. So what happens in that case is the hotel is the merchant of record, so the hotel charges the customer, and the total amount that the customer pays is the tax basis. And the travel agency or the OTAs acting as travel agents in that instance would receive a commission. So the total amount. So do you tax the commission or the total retail price that the traveler pays for the travel? It's the total amount that the traveler pays, which is the way that the gross rental receipts should be viewed. It's from the eyes of the person who is paying or from the person engaged in the business. The person engaged in the business is the OTA in these instances, and the gross rental receipts for the person engaged in the business would be the total amount the OTA collects as the merchant of record from the customers, not the lower net rate that's then paid to the hotel. In fact, it was decided in the Rosemont decision, which was also an Illinois decision, that looking at gross rental receipts, because a consumer cannot get the right to occupy a room without paying the total price, the total price has to be considered the gross rental receipt. There is no way for a customer to not pay the OTA service fees and still stay in the room. So in order to be able to rent and stay in the hotel room, the consumer must pay every single piece of that charge, making the entire thing, the entire total that is paid, gross rental receipts. So suppose a traveler from Los Angeles works through a travel agent to book a hotel in, say, Bedford Park. How does Bedford Park tax that transaction? Do you tax the Los Angeles travel agent? You tax the merchant of record in the transaction, who is the hotel in that instance. That would be collecting the total amount the customer is paying for the room. For the room, right. So suppose they paid a separate fee to their Los Angeles travel agent. Then that fee would not be part of the room rental because it wasn't necessary to gain access to the room or to occupy the room. Okay. And why should this be different? These charges are inextricably tied to the total amount paid for the room. There is no way for a customer to separate out the amount for services that they're paying to the OTAs. They'll never know that. In fact, it's bundled with the tax amount. So this total amount paid by the customer should be looked at holistically as one big charge for the right to occupy the room. If we were to agree with your theory, could the OTAs just break out their fee separately? No. They could. However, in fact, arguably they should. Under the ordinances, the taxes should be stated separately. However, even if they did, the total amount the OTAs collect as the merchant of record is still the gross rental receipts under these ordinances, and the total amount paid by the customer is what the legislature intended to be taxed under these ordinances. Can I ask you a couple of quick questions? Have there been any relevant amendments to any of these ordinances since the district court ruled? Not to my knowledge, Your Honor, no. Okay. And with respect to your suggestion that we certify what I guess would be a whole nest of questions to the Illinois Supreme Court, I assume that it's pretty unusual for this case, these disputes to be in federal court simply here as a result of a CAFA removal, right? It depends on the jurisdiction and how the tax issues are handled in the different states, Your Honor. I'm talking about in Illinois. Yes. So there is no Supreme Court precedent on any of these issues. But there are plenty of channels for these cases to be brought to the Illinois Supreme Court directly, correct? My understanding is that in this case, this is the channel that we would have to get to the Illinois Supreme Court. That's not my question. My question is we ordinarily don't certify questions if cases are properly before us and it's simply a matter of time before the state court will have a reasonable opportunity to decide these issues. This issue would be a little different in the sense that there have already been several cases in the state of Illinois, and yet with these companies and the taxation of these companies, taxability of their service fees, and there is still no Supreme Court precedent to guide any of these jurisdictions. So as it stands in the state, I would say that this is a matter of vital public concern to know for these municipalities to know what amounts should be taxed in these transactions, and right now there's no clear answer. You're in your rebuttal time, you understand. I do. At this point, I will reserve the rest of my time for rebuttal. Thank you. All right. Thank you. And Ms. Ho? May it please the court. The municipalities attempt to apply 20th century tax laws to 21st century technology companies, founders on the rule that tax laws must be clear and unambiguous. That rule is not just a rule of statutory construction. It is a fundamental guarantee of fair notice, ensuring that taxpayers can rely on reasonable interpretations of tax laws. As Your Honor suggested, if the municipalities in this case wish to tax online travel companies and their services going forward, they must amend their ordinances to do so clearly and unambiguously. And to answer your question, Judge Hamilton, one of the municipalities in this case, Willowbrook, did in fact amend its ordinance after losing on summary judgment below, and that's Willowbrook 11-3-1 is that amendment. The claims in this appeal, however, going forward, must be resolved in the online travel companies' favor because they aren't who the ordinances unambiguously tax, and alternatively, because their services aren't what the ordinances unambiguously tax. First, the online travel companies aren't who the ordinances unambiguously tax. Nine of the 13 ordinances tax those who own, operate, or manage hotels. As held by the district court here, the Fourth and the Sixth Circuits, and numerous courts across the country, as we cite on page 13 of our principal brief, those statutory terms don't apply to online travel companies, much less clearly and unambiguously. And to your point, in a discussion with my friend, Judge Hamilton, you highlight control and physical premises, and we think these are two characteristics that apply in terms of owning and operating and managing and what those terms mean by any plausible definition. Online travel companies don't operate hotels or hotel accommodations or hotel rooms because they don't run the basic functions necessary to run hotels on a daily basis. We're being told, however, we're being told that the hotel operators essentially turn over control of a certain block of rooms to your clients. No, Your Honor, and that's not what the summary judgment evidence in this case clearly establishes. In fact, to the contrary, although there are many contracts at issue, virtually all of them make very clear that the hotels are not in any measure ceding any form of control, even, I think it's important to highlight out, certainly not over the hotels or hotel rooms, but the hotels also remain complete control over the reservation process itself. And, Judge Darrow, to your question about, I think you used the phrase, arguably control the reservation process. And I think, if anything, the hotels always, always retain the ability when an online travel agent facilitates a traveler's request for a reservation and carries that request to the hotels. The hotel always has the ability to turn down that reservation request and to say, no, we're not going to make any reservations available to travelers through the online travel agency. So I think it's important to highlight, not only do the contracts specifically set out refusal to cede control of any physical operation or other of the hotel, they actually make clear in practice and in the contracts that even the reservation process itself, that the hotels maintain control over that process. At a minimum, we think it's reasonable to construe operating hotels as not encompassing facilitating reservations, and that's all that's required to affirm judgment for the online travel companies as to these ordinances. I think the same thing is true about the four ordinances here that don't expressly state who is taxed, as that ambiguity must be resolved in the online travel company's favor. So summary judgment for the online travel companies in this case is required for all 13 ordinances because none of them clearly and unambiguously impose taxes on the online travel companies. Ms. Ho, one of the things that troubles me about this case is that this feels like a system for cutting the tax on a retail transaction down to wholesale rates, right? As far as the customer is concerned, he or she is paying what feels like the full hotel tax on the amount that he or she pays to the OTA, right? A couple of points to that, Your Honor. But less is actually collected. The customers, the travelers are informed on the various online travel companies' website. Deep, deep in the terms and conditions, right? Actually, Your Honor, no. If you hold your cursor over the taxes and fees comment, and if you also look at the rate, it's made clear to the traveler that the rate includes not only what the hotel is charging the traveler for the room, but also our facilitation fee for facilitating the reservation and all the other services that are provided here. The traveler really has no idea what those fees are, right? If I'm a customer, I have no idea how much Expedia or Orbitz is paying the hotel, do I? Well, and in fact, Your Honor, you don't. And the reason for that is that the hotels actually require confidentiality with respect to that in terms of not wanting to be undercut. I also don't know how much tax is being paid under taxes and fees, right? Because I get they're all lumped together. And, frankly, I'm concerned here not only about the taxation issues, but also about just consumer fairness and consumer practices with this. And, again, Your Honor, both lines are clear in terms of the taxes and fees. And, again, when you hold your cursor, it makes clear. It's clear that we won't tell you, the customer, how much you're paying in different taxes and fees, right? Well, again, Your Honor, that's a function of the confidentiality that the hotels require here. No, Your Honor, the customer does not know precisely which amount goes to taxes and precisely which amount goes to fees. That was what the question was. Thank you. Thank you, Your Honor. The hotel is contractually, we're obligated contractually to the hotels because they don't want that to be reverse engineered. But that isn't the municipality's complaint in this case. They're not complaining about any of that. They're trying to say that it is our services that we provide that are taxable. And I think by any plausible definition, at the very minimum, it's not clear and unambiguous that our services are what is targeted. All of the ordinances tax the leasing or letting of rooms, the use or occupation of rooms, or engaging in the business of leasing or letting rooms. The ordinary meaning of leasing or letting is the transfer of ownership or control from an owner or a possessor to a renter. Going back to the discussion. Why isn't that concept enough to decide all these cases? I think that concept is enough to decide. Certainly, it's enough. I mean, our position, certainly Judge Cannelli thought it was sufficient. I think it would be sufficient to decide 12 of the 13 ordinances at issue here. Our position on cross appeal with respect to the district court's holding as to what engaged in the business of renting means. Our position is that summary judgment is proper to the online travel companies with respect to that claim, too, really for the same reason that summary judgment was proper in terms of the gross rental receipts. In other words, what kind of language would it take to tax your transactions with your customers? Yes, and I think going back to the municipality at Willowbrook, that in this case, after losing on summary judgment amended, let me just read the language of that ordinance as amended. It says, under tax required and amount, there is hereby levied and imposed upon the use and privilege of engaging in the business of leasing, renting, making, facilitating, or servicing the leasing or renting of a hotel or motel room in the village of Willowbrook. So that's sort of on the what question. By using the term facilitating there, that refers to what we do as facilitators, as helping travelers make reservations. Further on down, I think this is important, too. It relates to the discussion we've been having in 11-3-3, the definitions section. It says, for purposes of this tax, the following definition shall apply, and it defines gross rental receipts as the total amount of consideration for occupancy valued in money, whether received in money or otherwise, including all receipts, cash, credits, and property or services of any kind or nature, including but not limited to amounts charged for the making, servicing, or facilitating reservations. So, again, Willowbrook went back and it amended its ordinance to refer to facilitating in both the who is required to collect or remit the taxes and also what is subject to the tax. And your clients agree that they owe the tax rate on the gross amount there? Yes, Your Honor. Okay. Yes. On the question of certification, can you tell us whether there are other cases against your clients making their way through the state courts? Yes, Your Honor. There are, in fact, cases in state courts. My understanding is that those cases have actually been stayed while this court is addressing the issue. Why does that make any sense? Obviously, what this court decides would not bind those courts in any way, but those cases are. Have you all asked for those stays? I don't know the answer to that question, Your Honor. I can check with my co-counsel, but I'm not sure who. It seems like a very peculiar notion of federalism in which state courts would defer to a federal court's decision on issues of state tax law. So, as Your Honor, this court's interpretations of these ordinances would certainly not bind any of those state courts. And as I said before, I think the important thing, Your Honor, here for purposes of your question, is that there are other cases pending involving other ordinances that have a path to the Illinois Supreme Court. So, let me ask you the same question I asked your colleague. What happens when the traveler makes an OTA reservation, shows up at the hotel, and is told, we're full? Again, that is a valid question. A couple of lawsuits for one thing. Happened to me last week. Yes. Knowing that we were going to be arguing this, I was wondering about the tax consequences of the transaction. Well, I think for purposes, I think that emphasizes two points to that, Your Honor. I think that does emphasize the control that the hotel itself exercises. So, what the traveler is promised is a prepaid reservation. The hotel certainly, when a traveler shows up, there's no room. It's the hotel's responsibility to what's called walk the customer. As Your Honor also discussed with my friend on the other side, if a traveler shows up inebriated, drunk, underage, again, those are the hotel's policies. And the hotel certainly retains control in the right to refuse access to a room. So, that's what's critical here is that it is the hotel at all times that has control over the access to the hotel room. That provides the key, as Your Honor said. And yet, the municipalities point to your clients talking about selling hotel rooms, right? And that's your marketing, your witnesses. Why shouldn't we give some weight to that in the tax issues? Certainly, Your Honor. And as we explain in our brief and as other courts have held on this point, I think the Fourth and the Sixth Circuit, again, referenced this in their decisions. In those contexts, sell is used as often as an industry parlance for what we do. And I find it interesting that in one of the excerpts on which my friend relies, the witness goes on to then define sell as meaning to facilitate, which is what we do. So, I think even on their own terms, I think the uses of those terms certainly makes clear, if not consistent with what we do as facilitating and not selling. I think the contracts themselves, which make clear that we are in no way, we don't own rooms, so we can't possibly be selling them, should control here. And in all events, as a matter of tax law, it's substance and not form and not the labels that either side attaches to something that governs. And again, even if this court saw a colorable argument that online travel companies rent rooms or engage in the business of renting rooms, that isn't enough for the municipalities to prevail. Their ordinance must unambiguously tax the online travel companies and their services. And because they do not, the online travel companies are entitled to summary judgment on all of the ordinances at issue for that reason, too. When you run out of things to say, you can quit. I will take that hint, Your Honor. If there are no further questions, thank you, Your Honors. Thank you, Ms. Ho. Rebuttal, Ms. C? May I proceed? First, I want to clear up a point about travel agents and travel agent transactions. I think it simply can be put that in a travel agency transaction, it's the hotel and the travel agent. The guest is getting the room, and the tax is on the full amount the guest is paying for the room. When you have a hotel and an OTA, the guest is getting the room, but the tax is paid on some lower amount than what the customer pays. There is no reasoning under the law for this difference or for this exemption that the OTAs are claiming to be able to get from the tax basis. And to Your Honor's point about cancellation, if a guest reserves and pays but never stays, then basically if there's no key and there's no stay, the guest reserves and pays, the taxable transaction of the reservation doesn't occur. So we're not trying to tax canceled transactions here. We're trying to tax the transactions in which the customer purchases from the OTA, the merchant of record, the right to stay in the room. So there's no tax owed if the customer never shows up and gets a room? If the consideration for the reservation is collected by the OTA and not refunded, then that would be a completed transaction. And those funds should be refunded and not retained by the OTA. I don't want to confuse that situation. But if there's no key and no stay, we're not trying to tax canceled transactions. That wasn't my position. That's inconsistent. You're talking about two different situations, cancellation with a refund and cancellation without a refund. Yes. We are not attempting to tax canceled transactions to simply answer the question. Either kind. Either kind. Correct. Okay. Well, if occupancy is a requirement for the municipalities to have authority to tax and in the absence of occupancy no tax is authorized, wouldn't that undermine your position? So I think I may have misspoke. We are not trying to tax transactions that have been canceled.  Because the reservation was not completed. And then the next point would be that these contracts cannot nullify the law. And the contracts between the OTAs and the hotels, this was not addressed by opposing counsel, but these contracts, what they are doing is attempting to nullify the tax law, which very clearly puts taxation on room rentals. And no one is going to say that a customer isn't getting access to rent a room when they complete a transaction with the OTA. It's very clearly and unambiguously taxed under the ordinances as they stand. I think that one of the main issues is that a customer cannot lease or rent a room from an OTA without paying these fees. It is inextricably part of the total amount that is paid by the customer. And these taxes should be applied equally. There is no reason that when a customer books directly through a hotel, they are taxed on a larger amount versus when a customer books through an OTA, some lesser amount of tax is being transferred to the municipalities. That is inconsistent and there is no explanation under the law for that difference in tax basis when the same reservation is being accomplished by both entities. And if Your Honors have no further questions. Thank you very much, Counsel. The cases are taken under advisement.